**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ROBERT HAUGHIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. ELH-18-3963 |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., et al. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants contend that Plaintiff has failed to state a claim under 42 U.S.C. § 1983. Defendants by-pass the factual pleadings incorporated by reference in each count of the pleading and allege that Plaintiff has merely regurgitated legal elements. Defendants' Motion at 4. Defendants are wrong. Plaintiff has set forth "a short and plain statement of the claim showing that [] [Mr. Haughie] is entitled to relief." Fed. R. Civ. P. 8. Plaintiff submits this motion in opposition to defendants' motion for judgment on the pleadings.

**STANDARD OF REVIEW**

In evaluating a Rule 12(c) motion, a court may consider the complaint, the answer, matters of public record whose authenticity is not in dispute, and exhibits attached to the complaint or answer so long as they are "integral to the complaint and authentic." Massey v. Ojaniit, 759 F.3d 343, 347 (4th Cir. 2014). A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of a plaintiff's claims or any factual disputes. Massey, 759 F.3d at 353. A complaint must provide a short and plain statement that provides the defendant with notice of the claim being asserted, and supply

enough factual matter, taken as true, to suggest a violation. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 554-55 (2007). The Supreme Court explained in Twombly that a complaint is "not require[d] [to include] heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." <u>Id</u>. at 570. In determining whether a complaint alleges a plausible claim, a court must accept as true all well-pled facts and draw all reasonable inferences in favor of the plaintiff. <u>Nemet Chevrolet, Ltd</u>. <u>v. Consumeraffairs.com</u>, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

## FACTS

On November 11, 2015, Plaintiff began to experience persistent and painful headaches. Compl. ¶ 31. Plaintiff reported these headaches to Defendant Mallory, who failed to record Plaintiff's report. <u>Id.</u> The headaches continued to worsen and began to affect Plaintiff's vision, balance, speech, and alertness. Compl.¶ 31-34. Plaintiff again reported these headaches to Defendant Williams, who like Defendant Mallory, failed to accurately report the headaches and now worsening, symptoms. Compl. ¶. 35. Defendant Sisay recorded the debilitating headache – three weeks after onset – on December 2, 2015. Compl. ¶ 36-37. Despite Plaintiff's persistent pain, weakness, and dizziness, Defendant Sisay did not provide appropriate treatment to address Plaintiff's symptoms. <u>Id.</u>

In succession between the dates of December 2, 2015 until December 24, 2015, Defendant Smith, Rockefeller, Peters, Azubuike Ayalew, Awanga, and Bishaw saw Plaintiff's physical movement, speech, and alertness deteriorating. Compl. ¶ 37-51. Plaintiff requested medical assistance but Wexford Defendants, one by one, failed to provide adequate treatment, record the worsening symptoms, and make appropriate referrals. <u>Id</u>. Instead, Plaintiff was left in persistent pain as he watched his bodily

functions, speech, and balance continue to decline. Compl. ¶ 37-51. Defendants waited until Plaintiff was unable to move his left leg, had numbness in left hand, no normal movement in right hand, and had abdominal pain going through chest to shoulder, to take Plaintiff to the hospital. Compl. ¶ 52-53.

On December 24, 2015, over a month after the initial report of headaches, a scan revealed that Plaintiff had a brain tumor. Compl. ¶ 52-57. On December 28, 2015, Plaintiff underwent surgery to remove the untreated and undiagnosed brain tumor. Compl. ¶ 53-54.  Had Wexford Defendant's properly treated Plaintiff for a brain tumor, Plaintiff would not have experienced severe and significant pain and suffering for over a month while he waited for appropriate treatment. Compl. ¶ 57. Instead, Plaintiff was left in pain as he observed his bodily functions and mental facilities rapidly decline, while Defendants elected not to treat, document, or refer Plaintiff to a specialist. Id.

## ARGUMENT

I. **PLAINTIFF HAS IDENTIFIED THREE SPECIFIC POLICY OR CUSTOM THAT CAUSED HIS CONSTITUTIONAL INJURY**.

Defendants contend that Plaintiff "does not factually allege the existence of any policies or custom," Def. Motion at 5, again Defendants conveniently bypass Plaintiff's incorporation of the previous paragraphs of the complaint which contain factual allegations.   Despite Defendants' contention, Plaintiff has identified specific policies or customs that has resulted in his constitutional injury. Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. 1987) (requiring that Plaintiff "identify[] the specific 'policy' or 'custom' that caused the constitutional injury."):

3

One, a refusal to treat serious medical conditions,[1] such as brain tumors, until patient is no longer able to recover from the injury – resulting in further damage to the brain, body, and creating long-term disability, Compl. ¶  62; 78-79

Two, a refusal to accurately describe and document a patient's symptoms of a brain tumor intending to delay potential treatment for a brain tumor, Compl. ¶ 50;78

Three, a refusal to take patients with serious medical conditions, such as a brain tumors to a medical specialist to identify, treat, and remove the tumor, to ensure the patient does not suffer long term disability, severe pain, or life threating injury. Compl. 57;62;78-79. Given that Plaintiff has identified three different policies or customs, this Honorable Court should deny Defendants' motion.

## II.    PLAINTIFF STATES CLAIMS OF LIABILITY

Defendants continue to argue that Plaintiff does not provide a "single factual allegation against Wexford or any other person," Defendants, again, are simply wrong. Def. Motion at 4. Plaintiff has identified two separate claims of action: a. supervisory liability; b. and, co-conspirator liability.

### a.  Supervisory Liability

To prove supervisory liability under § 1983 Plaintiff state a claim that:

---

[1] "A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Smith v. Wexford Health Sources, Inc., No. GJH-16-3931, 2018 WL 1413008, at *3 (D. Md. Mar. 20, 2018). With all reasonable inference, a brain tumor is a "serious" medical condition.

> "(1) 'that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff'; (2) 'that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'[]; and (3) 'that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.' Randall v. Prince George's Cty., Md., 302 F.3d 188, 206 (4th Cir. 2002).

Plaintiff has stated a claim for each element and will discuss each in turn:

### i.   Actual Or Constructive Knowledge

Plaintiff has sufficient pled "actual or constructive" knowledge because "[c]onstructive knowledge may be evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of them." Spell v. McDaniel, 824 F.2d 1380, 1387 (4th Cir. 1987).

Here, drawing all reasonable inferences in favor of the plaintiff, Plaintiff has sufficiently shown, at the least, "constructive knowledge" of "widespread or flagrant" practice of delay medical treatment for serious medical conditions. Id. Compl. ¶ 79-80. Specifically, this Honorable Court has to look no further then the pending cases against Wexford for delaying medical treatment, in similar to brain tumors, other serious medical conditions.[i] Williams v. Wexford Source Inc., No. 1:19-cv-00033-CB; Bost et al v. Wexford Health Sources, Inc. No.1:15-cv-03278-ELH. Or, Paige v. Wexford Health Sources, Inc., No. 16-CV-1315-MJR, 2017 WL 119348, at *6 (S.D. Ill. Jan. 12, 2017), where Wexford treated Plaintiff for "migraine and vision loss" delaying treatment of what actually, like here, was a brain tumor.

Wexford also had actual knowledge. By way of example, in Perez v. Fenoglio, 792 F.3d 768, 781–82 (7th Cir. 2015), the Court found that "an inmate's correspondence to a

prison administrator may [] establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." Likewise, here, Plaintiff, alerted medical staff, reasonably inferred to be supervised by Wexford supervisor personal, at least ten times over the span of six weeks, about his deteriorating medical condition, pain, and lack of sufficient treatment. Compl. ¶ 35-53. Like in Fenoglio, Plaintiff's verbal "correspondence" with Wexford personal provided Wexford supervisory personal "sufficient knowledge of a constitutional deprivation."

Accordingly, Wexford supervisory personal had both constructive and actual knowledge.

### ii.    Deliberate Indifference

Plaintiff, with ease, sufficiently pled deliberate indifference of Wexford defendants. "Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available . . . A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Smith v. Wexford Health Sources, Inc., No. GJH-16-3931, 2018 WL 1413008, at *3 (D. Md. Mar. 20, 2018).

Here, "even a lay person would easily recognize the necessity for a doctor's attention" for a brain tumor. Plaintiff was "objectively . . . suffering" from the brain tumor as he was having difficulty keeping balance, severe headache, lack of appetite, decreased alertness, dizziness.  Compl. 33-34.  Wexford was well aware of Plaintiff's

need for medical attention, given his numerous reporting of symptoms and pleas for adequate medical attention. Compl. 35-53. Lastly, Wexford "failed to . . . ensure the needed care was available" for Plaintiff's brain tumor and delayed treatment until Plaintiff health deteriorated and he was in pain and unable to move parts of his body. Compl. ¶ 52.

### iii.   'Affirmative Casual Link'

Plaintiff has sufficiently pled an "affirmative casual link." "Causation is established when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). "The proof of causation may be direct, 'as in *Monell,* where the policy commands the injury of which the plaintiff complains .... [o]r may be supplied by [the] tort principle that holds a person liable for the natural consequences of his actions.'" Slakan v. Porter, 737 F.2d 368, 376 (4th Cir. 1984). Here, it is reasonable to infer that, the "natural consequences" of Wexford's supervisory personals custom – i.e. a refusal to treat, properly document, and refer patients with brain tumors – was Plaintiff's debilitating injury.

### b. Co-Conspirator Liability

While Defendants' arguments regarding supervisory liability is addressed above, Plaintiff's allegations of a civil conspiracy do not fit under the Monell framework, as they are intended to establish co-conspirator liability for each Defendant who is found to have taken acts to assist the medical malpractice or constitutional violation of the others. Under Maryland law, civil conspiracy serves to extend liability to co-conspirators once the plaintiff has established some other tortious wrong. See, e.g., Hoffman v. Stamper,

155 Md. App. 247, 843 A.2d 153, 178-79 (Md. Ct. Spec. App. 2004) (reversed on other grounds by <u>Hoffman v. Stamper</u>, 385 Md. 1 (Md. Ct. App. 2005). Because conspirators "do not voluntarily proclaim their purposes," a conspiracy is typically established by circumstantial evidence consisting of "inferences drawn from the nature of the acts complained of, the individual and collective interests of the alleged conspirators, the situation and relations of the parties, their motives and all surrounding circumstances preceding and attending the culmination of the common design." <u>Daugherty v. Kessler</u>, 264 Md. 281, 292, 286 A.2d 95 (1972); <u>Western Md. Dairy v. Chenoweth</u>, 180 Md. 236, 243 (1942). Because a "concurrence of action by the co-conspirators on a material point is sufficient to allow the jury to presume the concurrence of sentiment and, therefore, a conspiracy," the sum total of Plaintiff's allegations must be taken into account when analyzing whether he has adequately stated a basis for co-conspirator liability. Hoffman, 155 Md. App. at 290.

Here, taking into account the sum total of Plaintiff's allegation, Plaintiff alleges that every single defendant is a licensed medical professional, with a reasonable inference, that as medical professionals, defendants are aware of the medical standard of care. Compl. ¶ 16-27. Secondly, that these individual Defendants, despite their medical knowledge and training, worked together to deny Plaintiff's medical care by improperly treating, properly document, and make referrals until Plaintiff's health deteriorated to the point that he was unable to move part of his body, was in pain, and had difficulty speaking, Compl. ¶ 54-55; 70; Thirdly, that the Defendants did so to protect one another from liability of depriving Plaintiff of his rights, Compl. ¶ 70. Thus, the elements of civil conspiracy are met.

Should this Honorable Court find that the existence of the policies and liability described above require further factual support, Plaintiff respectfully request leave to amend his compliant state such facts, as there are myriad indicators of Wexford's failure to provide constitutionally appropriate medical care to inmates at DPSCS facilities such as multiple lawsuits – some even cited herein.

**III.    The Wexford Defendants Are Liable for Violations of the MD Decl. of Rights**

The Wexford Defendants next contend that they cannot be held liable for violations of the Maryland Declaration of Rights because they are a private contractor. Of course, because any agent of the government "can commit these kinds of Constitutional transgressions," DiPino v. Davis, 354 Md. 18, 50-51 (1999), claims for relief against private entities and individuals have been upheld. See, e.g., Bost v. Wexford Health Sources, Inc. 2017 U.S. Dist. LEXIS 122477, *123 (D. Md. 2017) (denying summary judgment on claims for violation of Article 24 and 25 against Wexford as contractor for DPSCS).

Plaintiff has alleged an Eighth Amendment violation against the Individual Defendants and has set forth specific allegations of the existence of a policy perpetuated by Wexford that amounts to deliberate indifference. At this stage, Plaintiff's claim for violation of Article 25 must therefore also proceed, as Plaintiff has alleged that Wexford was satisfying a state or public function pursuant to its contract with DPSCS. Compl. ¶ 11-12.

**IV.    Plaintiff's Complaint Establishes The Rare Case of Emotional Distress**

Plaintiff submits that a review of the facts, Compl. ¶ 31-57, are all that is necessary in order to discern to prove emotional distress.  The standard for determining whether a

Plaintiff has alleged a claim for IIED is whether the conduct "go[es] beyond all possible bounds of decency," as to "be regarded as atrocious, and utterly intolerable in a civilized community." <u>Coner v. Williams</u>, 2019 U.S. Dist. LEXIS 23193, *11-12 (D. Md.  Feb. 12, 2019).

Here, Plaintiff was prescribed over the counter medication, Motrin, to treat a debilitating brain tumor. Compl. 46. Plaintiff was left with debilitating pain, Compl. 47, and was forced to remain without adequate medical care as he watched his symptoms progress to the point of beginning to lose motor function, Compl. 47;52. Despite his worsening symptoms and numerous requests for help, Plaintiff was not treated until December 28, 2015, over a month after the persistent and worsening symptoms began. Comp. 54-57. Defendants' actions of ignoring an ailing patient who watched as his bodily functions began to worsen, while refusing to provide adequate medical care, indeed, "go[es] beyond all possible bounds of decency," as to "be regarded as atrocious, and utterly intolerable in a civilized community." <u>Coner v. Williams</u>, 2019 U.S. Dist. LEXIS 23193, *11-12 (D. Md.  Feb. 12, 2019).  Thus, Plaintiff has sufficiently pled emotional distress.

## V.    Conclusion

For the foregoing reasons, the Defendants' Motion For Judgment On The Pleadings must be denied as to all causes of action. If the Court finds that a particular cause of action requires additional factual support, Plaintiff respectfully requests leave to so amend his Complaint.

Respectfully submitted,

/s/ Fareed Hayat /s/
Fareed Nassor Hayat, Esq.
THE PEOPLE'S LAW FIRM, LLC
200 E. Lexington St., Ste 1111
Baltimore, MD 21202
Fareed.hayat@
thepeopleslawfirm.net